ORDERED in the Southern District of Florida on ___FEB 04 2009___



A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| FLORIDA DEVELOPMENT ASSOCIATES LTD., a Florida limited partnership, | Case No.: 04-12033-BKC-AJC<br>04-12034-BKC-AJC<br>04-12035-BKC-AJC |
| Debtor. | Chapter 11 Proceedings<br>Jointly Administered |
| _____/ | |
| FLORIDA DEVELOPMENT ASSOCIATES LTD., a Florida limited partnership, | |
| Plaintiff, | Adv. Case No. 08-1380-AJC |
| v. | |
| KNEZEVICH AND ASSOCIATES, INC., etc., et al. | |
| Defendants. | |
| _____/ | |

### ORDER DENYING DEFENDANTS'
### MOTIONS TO DISMISS AND GRANTING MOTIONS FOR ABSTENTION
### (D.E. 7, 8, 21 AND 22)

**THIS MATTER** came before the Court at the hearing on September 4, 2008, on (i) DDA Engineers, P.A., f/k/a Donnell Duquesne & Albaisa, P.A. (hereinafter "DDA"), Ramon Donnell (hereinafter "Donnell") and Raul Gonzalez (hereinafter "Gonzalez")'s Motion for Abstention or in

the Alternative Motion to Dismiss for Lack of Subject Matter Jurisdiction (D.E. 21); (ii) V. John Knezevich's ("Knezevich") Motion Requesting the Court to Abstain From Exercising Jurisdiction Over Adversary Proceeding or, Alternatively, Requesting the Court to Dismiss for Lack of Subject Matter Jurisdiction (D.E. 7); (iii) Knezevich and Associates, Inc. and Thornton Tomasetti, Inc.'s ("TTG") Motion to Dismiss for Lack of Jurisdiction, or Alternatively, Requesting the Court to Abstain from Exercising Jurisdiction Over Adversary Proceeding (D.E.8); and (iv) DeSimone Consulting Engineers, LLC ("DeSimone"), William O'Donnell ("O'Donnell") and Steven Goldstein's ("Goldstein") Motion to Dismiss Adversary Proceeding (D.E. 22) (D.E. 7, 8, 21 and 22 are together referred to as the "Motions").

The Court has reviewed the Motions, heard argument of counsel, and is otherwise fully advised in the premises. For the reasons set forth below, the Defendants' Motions as to abstention are **GRANTED** and the Motions as to jurisdiction and sovereign immunity are **DENIED**.

## I.   Procedural Background

On June 10, 2008, Plaintiff filed this Adversary Proceeding which arises out of construction defects to the balconies of the condominium building of which Plaintiff is the developer. The Plan of Reorganization, confirmed by this Court, reserved this Court's jurisdiction to bring this Adversary Proceeding pursuant to which Plaintiff is seeking more than $5,000,000.00 in damages.

The Defendants have moved this Court to dismiss, or alternatively to abstain from exercising jurisdiction, over this Adversary Proceeding. The Defendants have argued that this Court lacks subject matter jurisdiction and alternatively, that this Court should abstain from exercising its jurisdiction over these proceedings under the permissive abstention provisions of 28 U.S.C.

§1334(c)(1).[1]

## II.   Factual Background

The Plaintiff is the owner and developer of the Bentley Bay Condominium (hereinafter "Project"), containing two towers with a total of 168 condominium units along with appurtenant common elements. The Plaintiff hired Keystone Construction Group, Inc. (hereinafter "Keystone") as the general contractor to build the Project. The instant causes of action against these Defendants concern allegedly defective design, inspection, and related professional services provided to the Project pertaining to the Project balconies.

The Complaint alleges that DDA, as structural engineer of record for the Project, through the services of its individual engineers, Donnell and Gonzalez, designed all structural elements and systems on the Project, including, but not limited to, the exterior balcony slabs. Plaintiff further alleges that after DDA's initial structural design, Keystone hired AGR Fabrications International Group (hereinafter "AGR") as the balcony railing subcontractor. The Complaint alleges that AGR in turn hired Knezevich & Associates, through its engineer Knezevich, to design the balcony railing system, but that the balcony railing system Knezevich & Associates and Knezevich designed was defective.

Plaintiff alleges that Knezevich & Associates and Knezevich presented their defectively designed shop drawings to DDA, who in turn approved same through their individual engineer Gonzalez, as supervised by Donnell, and that the defectively designed balcony railing system was incorporated into the structural plans for the Project. Plaintiff alleges that after DDA's approval of

---

[1]Defendants DeSimone, O'Donnell and Goldstein have also sought dismissal based upon their contention that the claims against them are barred by the doctrine of sovereign immunity.

3

the defective balcony railing shop drawings, Keystone and its subcontractor, AGR, began erecting the balcony railings.

The Complaint alleges that well before the filing of Plaintiff's Chapter 11 petition, DeSimone, through its individual engineers O'Donnell and Goldstein, had contracted with Keystone to act as the special inspectors for the structural work on the Project. The Complaint further alleges that pursuant to that arrangement, DeSimone, O'Donnell and Goldstein agreed to conduct structural inspections to ensure compliance with the design documents and the South Florida Building Code.

The Plaintiff alleges that thereafter, it separately contracted with DeSimone for the inspections of the balcony railing installation, but through its engineers O'Donnell and Goldstein, DeSimone failed to detect numerous material construction and design defects. The Plaintiff further claims that by the time AGR discovered the alleged defects, Knezevich & Associates was purchased by TTG and Knezevich began working for TTG. The Plaintiff alleges that TTG thus became the railing subcontractor's engineer, and the subcontractor requested TTG to redesign the rails. The Plaintiff asserts that TTG should have realized a re-engineering of the entire railing system was required due to other readily observable installation defects, yet TTG failed to do so when it submitted the new shop drawings for the surface mounted railing system and DDA once again approved TTG's shop drawings as structural engineer of record, even though they did not accurately reflect conditions in the field.

On October 24, 2005, South Florida was hit by Hurricane Wilma which destroyed a substantial portion of the balconies, revealing the construction and design defects that had existed since the inception of Plaintiff's bankruptcy petition. It is also undisputed that the Plaintiff not knowing at the time what caused the railing failure, with this Court's authority, immediately hired

4

Knezevich, who at that time was still working for TTG, the successor company of Knezevich & Associates, to conduct a forensic investigation into the cause of the balcony railing failure and design the remedial work necessary to repair the rails. The contract between TTG and Plaintiff estimated a budget of $35,000 in fees plus expenses for TTG to develop a full understanding of the scope of the problems at the Project. However, it is undisputed that with this Court's authority, Plaintiff ended up paying TTG $251,297.56, plus over $215,000 more to third parties for testing and related services requested by TTG as part of their forensic examination.

The Plaintiff alleges that rather than properly explaining to Plaintiff and this Court the nature of the failure in the balcony railing system caused by the original defective design by Knezevich & Associates and Knezevich individually, Knezevich and TTG continued to charge Plaintiff exorbitant fees for continued tests and studies which were, unbeknownst to Plaintiff, designed to try to find a way to justify the defective original design. Plaintiff further alleges that TTG and Knezevich were unsuccessful because it soon became clear that TTG and Knezevich were spending hundreds of thousands of dollars, from funds otherwise due to Plaintiff's creditors, to try to exonerate themselves from their own wrongful conduct and negligence. Upon learning of this, Plaintiff alleges it terminated its contract with TTG.

Thereafter, it was determined the entire railing system had to be replaced rather than repaired. As a result of the balcony railing defects, and with this Court's involvement and authority, Plaintiff paid $5,168,198.59 for replacement of the railing system, forensic testing, security services, and related expenses which Plaintiff alleges is directly attributable to the defective design and inspection of the balcony railings and curbs.

## III. Legal Discussion

### A. SUBJECT MATTER JURISDICTION

#### 1. Related-to Jurisdiction

Bankruptcy court jurisdiction potentially extends to four types of title 11 matters, pending referral from the district court: " '(1) cases under title 11, (2) proceeding arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11.' " *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1175 (3d Cir.1996), *quoting, In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir.1991). The parties and Court concur that the only potential basis for this court to exercise jurisdiction over this matter is under the "related-to" jurisdictional doctrine set forth in 28 U.S.C. § 1334. The Eleventh Circuit has expressly adopted the "related-to" jurisdictional test set forth in *Pacor v. Higgins*, 743 F.2d 984, 994 (3d. Cir. 1984), for determining whether a civil proceeding is "related to" bankruptcy. *In Re: Toledo*, 170 F.3d 1340, 1345 (11th Cir. 1999).

The test for determining whether a civil proceeding is "related-to" bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate. *Pacor, Inc.*, 743 F.2d at 994.

#### 2. This Court has Related-to Jurisdiction

Here, and throughout the course of the bankruptcy proceedings, the Plaintiff alleges that the estate's funds were diminished as a result of the Defendants' collective wrongdoing and negligence,

6

and then as a result of certain Defendants' efforts to cover up this conduct. In this Adversary Proceeding, Plaintiff is seeking the recovery of those funds for the benefit and administration of the bankruptcy estate.

Additionally, the Adversary Complaint seeks to recover money for physical damage done by the Defendants to the Plaintiff's real property. "Related proceedings include those claims to property of the bankruptcy estate as defined by 11 U.S.C. § 541. Collier, *supra,* at 3.01[iv]. These claims are related because they will have an effect on the assets held by the estate in bankruptcy." *Medina-Figueroa v. Heylinger,* 63 B.R. 572, 574-5 (D. Puerto Rico 1986), *citing,* 11 U.S.C. sect. 541(a). Apart from minor exceptions not applicable here, property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.*

In the instant case, this proceeding's effect on the estate and real property of the Plaintiff debtor is tangible and real. While the Defendants draw attention to the fact that the damage was not actually discovered by the Plaintiff until after the Plan was confirmed, the causes of action began to accrue well before the commencement of the Plaintiff's Chapter 11 case filed in 2004. In *In re Pan American Hosp. Corp.,* this Court found that the bankruptcy court's focus in deciding whether a claim arose pre- or postpetition, should be on the time when the act giving rise to the claim was performed. 364 B.R. 839, 843-44 (Bankr. S.D.Fla. 2007), *citing,* 11 U.S.C.A. § 101(5). This Court further found that a claim may be a "prepetition" claim, for federal bankruptcy law purposes, even though it is based on a cause of action which, under state law, is not cognizable until after the petition is filed. *Id., citing In re The Highland Group, Inc.,* 136 B.R. 475, 480-81 (Bankr. N.D.Ohio 1992) ("[t]he majority of courts ... have held that a right to payment arises at the time of the Debtor's prepetition misconduct as opposed to the manifestation of the injury itself."). *Id.* As such, although

7

the defective balconies were not discovered until post-petition, the claims against these Defendants nonetheless accrued pre-petition. Accordingly, Defendants' contentions that Plaintiff's claims arose post-petition and post-confirmation, thus requiring dismissal are without merit.

### 3. This Adversary Proceeding has a Close Nexus to the Bankruptcy Plan and Proceeding

Defendants assert that because this Adversary Proceeding was filed post-confirmation, the Court should decline to exercise jurisdiction over this matter. However, if a case has a "close nexus" to the bankruptcy plan or proceeding, a bankruptcy court's jurisdiction at the post-confirmation stage does not disappear. *In re Resorts International, Inc.*, 372 F. 3d 154, 166-67 (3rd Cir. 2004).[2]

The Defendants seek to rely upon *Resorts* for the proposition that the application of the facts and findings in that case, require that this Court dismiss this case for failing to meet the "close nexus" standard. In *Resorts,* the court held that accounting malpractice claims asserted by a litigation trust established under the debtors' confirmed Chapter 11 plan against an accounting firm that provided tax advice and accounting services to the trust, did not come within the post-confirmation "related to" jurisdiction of the bankruptcy court. *Id.* at 170-171. However, the Court finds that the facts in *Resorts* are inapplicable to the facts at issue in the instant proceeding.

In *Resorts,* the debtor was not a party to the malpractice action, instead, a legally distinct

---

[2] Defendants argue that this is a non-core proceeding and the Court should therefore refrain from exercising jurisdiction over this matter. However, the Court need not resolve whether this is a "core" proceeding for subject matter jurisdictional purposes because "[w]hether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction." *In re Marcus Hook,* 943 F.2d 261, 266 (3d Cir. 1991). Under 28 U.S.C. § 157, a bankruptcy court might have jurisdiction over a proceeding but still might not be able to enter final judgments and orders. *Id.* Non-core "related to" jurisdiction is the broadest of the potential paths to bankruptcy jurisdiction. *Donaldson v. Bernstein,* 104 F.3d at 547, 552 (3d Cir. 1997). The issue presented by the motions and addressed by the Court is limited to whether this matter is "related to" the bankruptcy.

8

entity, a litigation trust brought the claim. *Id.* at 157. Here, the debtor is the Plaintiff. Furthermore, the accounting firm charged with the malpractice was retained post-confirmation, and as such the alleged malpractice did not occur pre-petition, nor pre-confirmation. *Id.* at 158. Here, the causes of action asserted against the Defendants are alleged to have arisen pre-petition and pre-confirmation. Moreover, the court in *Resorts* found that "none of the Plan's retention provisions were intended to serve as a basis for jurisdiction over the Litigation Trust and third-party accountants." *Id.* at 159. Here, Article IV, D.3. of the Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization specifically reserved the Debtor's rights to bring, "Claims against Professionals Including Construction Professional Engineers and Architects," further stating:

> Prior to the Petition Date, the Debtor retained construction professionals, architects, engineers and other professionals. Debtor believes that these professionals may be liable for claims arising from their services to the Project which claims include, but are not limited to, breach of contract and negligence. All of these claims are specifically preserved and maintained by the Debtor. To the extent that any of these entities have filed proofs of claim against the Debtor, Debtor intends to object to these claims where appropriate. In addition, Debtor disputes the values of the services provided by certain professionals and believes claims for professional negligence may exist. The Debtor is continuing its investigation of any and all claims which the Debtor may have against third parties.

Attached to the Fourth Amended Joint Chapter 11 Plan as Exhibit "B" is a Schedule containing the list of potential targets for Third Party Litigation Claims being asserted, and on Exhibit "B" are Defendants, DDA and DeSimone. The Defendants who are not specifically listed as potential litigation targets argue that they are not subject to this Court's jurisdiction as a result of the Plan's failure to name them. This is unpersuasive for two reasons. First, all Defendants are listed in the general description of construction professionals, architects, engineers and other professionals. Secondly, failure to list specifically potential litigation targets does not otherwise

waive a debtor's right to pursue all causes of action. Disclosure of potential litigation targets is helpful to protect creditors from a debtor who may try to hide assets and to maximize court efficiency by shortcutting attempts to litigate what should or could have been disposed of previously. *See, Westland Oil Development Corp. v. MCorp Management Solutions, Inc.,* 157 B.R. 100, 102 (S.D. Tex 1993), *citing* 11 U.S.C.A. § 1125(a), (a)(1). In addition, because the subject alleged defects were by their very nature latent, the Debtor could not have known to name all of the Defendants at the time of confirmation. As such, Defendants' motion to dismiss is without merit and is denied.

## B. PERMISSIVE ABSTENTION

The Defendants request the Court exercise its discretion to permissively abstain from this matter pursuant to 28 U.S.C. § 1334(c)(1). Section 1334(c)(1) states: "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with state courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." *Id.* While a decision whether to abstain is one made within a court's discretion, "... federal courts generally should exercise their jurisdiction if properly conferred," and "abstention is the exception rather than the rule." *In re Chicago, Milwaukee, St. Paul & Pac. RR. Co.,* 6 F. 3d 1184, 1189 (7th Cir. 1993).

In response to the Motions, Plaintiff agreed that the claims raised in this adversary proceeding are wholly state law claims that will not involve the interpretation of the Plan or any order of this Court. Plaintiff also agreed that there are no difficult or unsettled legal principles involved, that Defendants have a right to a jury trial and that Defendants may have third party claims against non-

parties to this action. There is further no material dispute between the parties that many of the factual assertions raised by the claims occurred pre-petition or that the potential for a claim -- even if unmatured -- against any one or more of the Defendants existed at the time of Plan confirmation.

Pursuant to 28 U.S.C. §1334(c)(1) this Court may exercise its broad discretion to abstain from hearing this case "in the interest of justice, or in the interest of comity with State courts or respect for the State law." See *In re Ackerman, Herbst and Pliskow, M.D., P.A.*, 221 B.R. 568 (S.D. Fla. 1998). In the present case, comity with the state courts and respect for state law support abstention by this Court. All the parties are Florida residents, and all the issues are matters of Florida law. Although the claims are "related to" the bankruptcy case, there is no compelling reason for the Bankruptcy Court to maintain jurisdiction over these proceedings.

In *E.S. Bankest, LLC v. Untied Beverage Florida, LLC*, (*In re United Container LLC*), 284 B.R. 162, 176 (Bankr. S.D. Fla. 2002), the Court listed fourteen (14) factors that courts should consider in determining whether cause exists to abstain from hearing a case pursuant to 28 U.S.C. §1334(c)(1):

### (1) the effect of abstention on the efficient administration of the bankruptcy estate;

In the instant case abstention would have little, if any, effect on the efficient administration of the bankruptcy estate. The claims being asserted have no connection to the Plan other than, if successful, the bankruptcy estate will have additional funds to distribute to its creditors. However, the estate's interest in the accumulation of assets does not turn a state law claim into one affecting the administration of the estate. *See Lawrence Group, Inc. v. Hartford Casualty Ins. Co.*, 285 B.R. 784, 788 (N.D.N.Y. 2002) (debtor failed to show that the instant claims would affect the administration of the bankruptcy estate where "the only relationship this action had to the bankruptcy

proceedings is that determination of the action would affect the ultimate size of the estate").

Plaintiff asserts abstention would create inefficiency in the administration of the estate as it would cause piecemeal litigation leading to inconsistent results. The Court believes Plaintiff's objection is not well founded and does not justify a denial of the motions to abstain. The Plaintiff argues that it is possible the condominium association may prove a claim against Plaintiff in this Court, while the Defendants may successfully defend the existence of defects in the state court claim for indemnity. While anything may be possible, the Court does not believe this possibility outweighs the other criteria strongly favoring abstention. In addition, this Court could take steps to insure that such a possibility does not become a probability. However, even if the parties find they must re-litigate certain common issues, the cost of such litigation does not persuade this Court that retaining this case is in the best interest of all parties currently involved or who may become involved.

### (2) the extent to which state law issues predominate over bankruptcy issues;

There are no bankruptcy law issues involved, all claims are made under state law. The only claims asserted are for negligence, damage due to a Building Code violation (pursuant to Florida Statute §553.84), and indemnification, all of which are based exclusively on state law. *See United Container* at 177. Although the indemnification claims raised in this proceeding may tangentially affect the claims administration process in the bankruptcy case, the causes of action stated in the Complaint are wholly state law claims. Therefore, it is unquestionable that state law issues predominate over bankruptcy issues.

### (3) the difficulty or unsettled nature of the applicable state law;

In the instant case, there are no unusual or unsettled issues that would require this Court's

expertise, though there is also nothing that would preclude this Court from being able to determine the issues in this case.

### (4) the presence of related proceedings commenced in state court or other nonbankruptcy courts;

There are no related proceedings commenced in state court or other non-bankruptcy court, therefore this factor is neutral. Moreover, although Plaintiff contends that there is a related proceeding in Bankruptcy Court, involving claims by the Bentley Bay Condo Association against the Plaintiff, any possible indemnity claims that may arise in the future out of the condominium association proceeding have no effect on the Defendants as the Defendants are not parties to that proceeding.

### (5) the jurisdictional basis, if any, other than § 1334;

Other than §1334, there is no basis for federal jurisdiction. There is no dispute that the claims raised by Plaintiff in this adversary proceeding are ordinary negligence, indemnity and breach of contract claims that, absent Plaintiff having filed bankruptcy in 2004, no jurisdiction would exist over such claims in bankruptcy court or in federal district court. There are no claims asserted based on any provision of the Bankruptcy Code. Moreover, Plaintiff's reliance on potential indemnity claims that may or may not arise following the final determination of a proceeding in bankruptcy court between the condominium association and the Plaintiff is unjustified as a claim for indemnification does not accrue until the time of payment of the underlying claim, judgment, or settlement amount.

### (6) the degree of relatedness or remoteness of the proceedings to the main bankruptcy case;

The adversary proceeding is remote to the proceedings in the bankruptcy case and

13

therefore the resolution of this case will have no effect on the Debtor's reorganization.

### (7) the substance rather than the form of an asserted "core" proceeding;

In an attempt to characterize this adversary proceeding as a core proceeding, the Plaintiff/Debtor relies on 28 U.S.C. § 157(b)(2)(O). However, at the hearing on the Motions, Plaintiff conceded this is not a core proceeding. Under Florida law "if a proceeding involves a right created by the federal bankruptcy law, it is a core proceeding...if the proceeding is one that could exist outside the bankruptcy it is not a core proceeding." See *In re Toledo*, 170 F. 3rd 1340, 1348 (11th Cir. 1999).

### (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to bankruptcy court;

There is no dispute that this is not a core proceeding.

### (9) the burden of the bankruptcy court's docket;

Retention of this case would burden both the Bankruptcy Court and the District Court. The Bankruptcy Court would necessarily pre-try all issues in the case, and the possibility of third-party claims may undoubtedly grow during the proceedings and create jurisdictional issues. Unless the parties agreed otherwise, once the case is ripe for trial, the Bankruptcy Court would transmit same to the District Court for the trial, requiring the District Court to first familiarize itself with the case.

### (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

There is no proof or suggestion that Plaintiff is forum shopping by commencing this proceeding in bankruptcy court, thus this factor is neutral.

**(11) the existence of a right to jury trial;**

The Defendants are entitled to a trial by jury and may well be demanding one. Because the Defendants have made clear they do not consent to a jury trial in Bankruptcy Court, the trial would be conducted by the District Court; therefore, any argument that efficiency might have been achieved if the adversary proceeding could have been heard by the Bankruptcy Court is irrelevant. Under the present circumstances, the most efficient and timely results will most likely be achieved by having the state court supervise all aspects of the Plaintiff/Debtor's claims, from pleadings, through discovery, pre-trial matters, jury trial and final adjudication.

**(12) the presence in the proceeding of non-debtor parties;**

The Defendants are non-debtor parties and thus abstention is proper.

**(13) comity;**

In the present case, where all the parties are Florida residents and all the issues are based on Florida law, and where there are no core issues for the Court to decide, there is no compelling reason for the Bankruptcy Court to maintain jurisdiction over this wholly state law proceeding. As the court in *United Container* noted, when a proceeding is based on state law and bears a limited connection to a debtor's bankruptcy case, abstention is particularly compelling. *Id.* at 177.

**(14) the possibility of prejudice to other parties in the action.**

The Defendants most likely will assert third party claims against non-debtor third parties. The mere possibility of prejudice to these other parties favors abstention. Accordingly, based on the foregoing analysis, the Court herein exercises its discretion to permissively abstain from hearing and trying this case.

C.  **SOVEREIGN IMMUNITY**

While the Court is compelled to state that, upon research and consideration, it believes the Defendants are not entitled to the protection of sovereign immunity, the Court will deny without prejudice the Defendants' *Motion to Dismiss Adversary Proceeding on Sovereign Immunity Grounds* premised upon its granting of permissive abstention of this Adversary Proceeding.

Thus, it is hereupon

**ORDERED AND ADJUDGED** that (i) DDA Engineers, P.A., f/k/a Donnell Duquesne & Albaisa, P.A., Ramon Donnell and Raul Gonzalez's Motion for Abstention or in the Alternative Motion to Dismiss for Lack of Subject Matter Jurisdiction (D.E. 21); (ii) V. John Knezevich's Motion Requesting the Court to Abstain From Exercising Jurisdiction Over Adversary Proceeding or, Alternatively, Requesting the Court to Dismiss for Lack of Subject Matter Jurisdiction (D.E. 7); (iii) Defendants' Knezevich and Associates, Inc. and Thornton Tomasetti, Inc.'s Motion to Dismiss for Lack of Jurisdiction, or Alternatively, Requesting the Court to Abstain from Exercising Jurisdiction Over Adversary Proceeding (D.E.8); and (iv) Defendants', DeSimone Consulting Engineers, LLC, William O'Donnell and Steven Goldstein's Motion to Dismiss Adversary Proceeding (D.E. 22) are **GRANTED** as to abstention and **DENIED** as to jurisdiction and sovereign immunity, as follows:

1. With respect to the requests for dismissal on the basis of lack of subject matter jurisdiction, the Motions are **DENIED**.

2. With respect to the requests, in the alternative, for permissive abstention, the Motions are **GRANTED** and the Court abstains from hearing this Adversary Proceeding. The Plaintiffs may proceed in state court on their state court claims.

3. With respect to the requests for dismissal on the basis of sovereign immunity, the Motions are **DENIED** without prejudice to renewal in any subsequent state court action.

###

**Copies furnished to:**

Peter D. Russin, Esquire
Florida Bar No. 765902
prussin@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
Attorneys for Debtors
3000 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone:    (305) 358-6363
Telefax:      (305) 358-1221
Co-Counsel for Plaintiff

Lee A. Weintraub
Florida Bar No. 940704
lweintraub@becker-poliakoff.com
BECKER & POLIAKOFF, P.A.
3111 Stirling Road
Fort Lauderdale, Florida 33312
Phone: 954-985-4147
Fax: 954-985-4176
Co-Counsel for Plaintiff

Attorney Peter D. Russin is directed to serve copies of this Order upon all interested parties immediately upon receipt of same and shall file a Certificate of Service with the Court.